**PETROVAL BUNKER INT'L
B.V., Plaintiff,**

v.

**CMA CGM S.A., Defendant.**

**No. 08 Civ. 10621 (CM).**

United States District Court,
S.D. New York.

July 14, 2009.

Jeremy O. Harwood, Blank Rome LLP, New York, NY, for Plaintiff.

Lawrence Jay Kahn, Freehill, Hogan & Mahar, LLP, New York, NY, for Defendant.

MEMORANDUM ORDER DENYING DEFENDANT'S MOTION FOR COUNTERSECURITY, DISMISSING THE CONTERCLAIM ON THE MERITS, GRANTING CROSS–MOTION FOR VOLUNTARY DISMISSAL PURSUANT TO RULE 41(a)(2) AND DISMISSING COMPLAINT WITH PREJUDICE

McMAHON, District Judge:

The facts of this matter appear straightforward.

Plaintiff Petroval Bunker International B.V. ("Petroval") is in the business of supplying fuel oil ("bunkers") to ocean going vessels. Defendant CMA CGM S.A. ("CMA") is one of the world's leading container shipping lines. The underlying dispute between the parties involves an action for the arrest of "unpaid" bunkers commenced against CMA by Petroval in London. In that action, CMA provided a bank guarantee to Petroval in exchange for the release of certain bunkers that had been arrested; the parties agree that this bank guarantee, which is for less than the full amount claimed by Petroval, is of no relevance to the proceeding here under advisement.

In connection with the dispute that underlies the London arrest action, both parties came to this court on the same day, seeking attachments under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. Plaintiff won the race to the courthouse[1] and obtained a Rule B attachment order from me; defendant voluntarily discontinued its competing action, which was pending before Judge Pauley.

However, the attachment order has never been served on any bank or other financial institution. Instead, the parties entered into settlement discussions, consisting principally of a string of e-mails between counsel for Petroval, Marcel Verhagen, and counsel for CMA, Mark O'Neil. (See Exhibit 3 to O'Neil Declaration). During the course of those e-mails, CMA made what it described as a "corporate promise" to make good on any judgment in an amount constituting the difference between the amount of the bank guarantees that were posted in England and the amount claimed by Petroval, which caused Petroval "in essence" to agree not to pursue its attachment "in exchange for such additional security." CMA alleges that Petroval's continuing failure to serve the Rule B order indicates an acceptance of defendant's "corporate promise" and the adequacy of that bare promise as security.

I surmise that the settlement negotiations were not fruitful because the spring of this year saw renewed jousting in this court. On April 16, 2009, CMA filed a motion for an order directing Petroval to post counter security pursuant to Rules E(2) and (7); six weeks later, on May 27, 2009, CMA filed an answer and asserted a counterclaim in this Rule B action for countersecurity in the amount of $9.155 million.

Petroval notified the court that it intended both to oppose the motion for countersecurity and to cross-move for leave to dismiss its complaint voluntarily. The Court deems the letter to be the opposition and the cross motion, and I have directed my deputy to docket it accordingly. To expedite resolution, I held a telephone conference today and heard the positions of the parties. I now deny the motion for countersecurity, and grant the motion to allow plaintiff to discontinue this action— albeit with prejudice.

Rule E(7) of the Supplemental Maritime Rules provides for security for counterclaims asserted in Rule B actions. In pertinent part, it requires that "a plaintiff for whose benefit security has been given *must* give security for damages demanded in the counterclaim, unless the court, for cause shown, directs otherwise." (Emphasis added). So mandatory is the giving of countersecurity that, "Proceedings on the original claim must be stayed ..." in the absence of either the posting of countersecurity or a court order excusing such posting.

---

**1.** Apparently defendant was the first to file (by one hour), but this court, to which plaintiff's action was wheeled out, was the first to enter a Rule B order.

■ The kicker, for our purposes, is the preambular language of Rule E(7)(a). Countersecurity is mandated only, "When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action . . . ." CMA has indeed asserted a counterclaim in the instant action—specifically, a counterclaim *for countersecurity*. The problem with both the motion and the counterclaim itself appears to be that CMA is not entitled to *counter* security, because CMA has not "given security for damages in the original action." In this regard, the parties agree that the "original action" referred to in Rule E(7) is this Rule B action in which the counterclaim is asserted, rather than the London action for arrest; CMA has represented to the court that it is not arguing that any security posted in London qualifies as "security . . . in the original action" within the meaning of the Admiralty Rules.

CMA argues that is has provided security as required by Rule B, and so is entitled to countersecurity. Originally, it argued that it was entitled to countersecurity because Petroval had restrained its funds; indeed, the motion papers were drafted on this supposition.[2] This assertion was retracted in a letter dated June 19, 2009, after some Rule 11–like rumblings from Petroval. Instead, CMA now argues that the "corporate promise" described above constituted "security" within the meaning of Rule E, and so entitles defendant to the posting of countersecurity in the amount of its counterclaim. CMA argues that the parties agreed that CMA's "corporate promise" would qualify as security for the purpose of staying execution of the Rule B order of attachment, as permitted by Rule

e(5)(a) (". . . the execution of such process shall be stayed . . . on the giving of security, to be approved by the court or clerk, or by stipulation of the parties . . . . The parties may stipulate the amount and nature of such security."). It contends that Petroval's failure to serve the Rule B attachment order evidences the parties' "stipulation" to this effect.

I cannot agree.

"Security" is not defined in Supplemental Rule E, which governs proceedings *in rem* and *quasi in rem* in Admiralty. But that is probably because "security" is such a well-known term of art, both in the law and in life. Black's Law Dictionary (7th Ed.) defines it as *"collateral given or pledged* to guarantee the fulfillment of an obligation; esp., the assurance that a creditor will be repaid (usu. with interest) any money or credit extended to a debtor." (Emphasis added). More generally, Webster's New Collegiate Dictionary (1977 ed.) defines "security" as, "Something given, deposited, or pledged to make certain the fulfillment of an obligation." Thus, the essence of the term "security" is the depositing or posting of some form of collateral, some thing, that offers a guarantee of payment.

I will assume, for purposes of this decision, that the bare promise on which CMA relies does not run afoul of the applicable statute of frauds and otherwise comports with all the contractual formalities that are necessary to make the promise enforceable.

The problem is that CMA's bare promise that it will make good any judgment is simply not "security" for any obligation to pay a judgment. Promises are made, not "given, deposited or pledged." And promises are frequently broken, which is why

---

**2.** In view of the argument that CMA now makes, I have some difficulty understanding how it could have been under the misimpression that its funds had been restrained pursuant to the Rule B order.

businessmen around the world so often insist that the persons with whom they do business "put their money where their mouth is" and collateralize them. Indeed, CMA's argument runs counter to the concept of security; if it did not, commercial courts and the lawyers who practice in them might well be out of business, because every breach of contract case is premised on the non-fulfillment of some promise—generally an unsecured promise.

Although it is not strictly pertinent, Local Rule 65.1.1(b) of the Southern and Eastern Districts of New York "identifies the kinds of undertakings, guarantees or deposits that constitute adequate security where security is required." *Pancoast Trading S.A. v. Eurograni S.r.l.*, 2008 WL 190376, at *2, 2008 U.S. Dist. LEXIS 4224, at *5 (S.D.N.Y. Jan. 22, 2008); *see also, Jaimie Shipping Inc., et al. v. Oman Insurance Company*, 08 Civ. 6882, 2008 WL 4178861, 2008 U.S. Dist. LEXIS 67765 (S.D.N.Y. Sept. 8, 2008). Needless to say, a bare promise by one party that it will make good a judgment is not among the forms of "security" listed.

CMA suggested in our telephone conference that the requirements of this local rule can be overridden when the parties agree on a form of security that is acceptable to them, as allowed by Supplemental Rule E(5)(a). This is true, but only where such agreement takes the form of a "stipulation." Here again, we are dealing with a term of art. A "stipulation" is "a voluntary agreement *between opposing parties* concerning some relevant point." (Black's Law Dictionary, 7th ed.) (Emphasis added). "Opposing parties" are to be found in lawsuits, and stipulations are agreements, made in writing (and, in this court, "so ordered" by a judge) or on the record. The opposing parties have never placed an agreement on the record in the lawsuit pending before me; CMA has not produced any written stipulation signed by counsel for Petroval, no doubt because the parties never signed one.

Because CMA has not posted any security, it is not entitled to countersecurity under Rule E(7)(a). CMA's motion for an order requiring Petroval to post "countersecurity" is, therefore, denied.

■ Petroval has cross-moved for leave to withdraw its complaint. CMA objects, so Rule 41(a)(2) comes into play. It provides:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

In this case, the defendant has vociferously objected to dismissal (on the ground that it would be prejudiced). It has also asserted a counterclaim.

The counterclaim is no obstacle. It is, as noted above, a counterclaim for countersecurity. The *ad damnum* clause makes that perfectly clear:

> WHEREFORE, the Verified Complaint should be dismissed, and CMA should be granted countersecurity in the amount of $9,155,513.55 to secure its counterclaim in the London arbitral proceedings, and CMA should be granted such other, further and different relief as the Court may deem just and proper in the premises.

It has been established that CMA is not entitled to countersecurity, because Petroval has not obtained any security (albeit by its own election). Since countersecurity is all CMA seeks by way of its counterclaim,

the counterclaim is hereby dismissed, on the merits. It has now been fully adjudicated.

As plaintiff has no desire to proceed further in this court, its claim is dismissed. As it has consumed the court's time by bringing a proceeding to obtain an order that was never utilized, and as it is obvious that the voluntary dismissal is being sought for tactical reasons, dismissal is ordered with prejudice.